Orletta P. WHATLEY, Appellant,

v.

K–MART DISCOUNT STORES, A Division of S. S. Kresge Company, et al., Appellees.

No. 15581.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 12, 1970.

Rehearing Denied March 19, 1970.

Harrison & Taylor, Ken Harrison, Westerfeld & Westerfeld, Maurice U. Westerfeld, Houston, for appellant.

Talbert, Giessel, Barnett & Stone, Alice Giessel, Houston, for appellee K-Mart Discount Stores.

John J. Eikenburg, Hellmut A. Erwing, Houston, for appellee Central Adjustment Bureau, Inc., for appellee.

PEDEN, Justice.

Plaintiff Orletta P. Whatley sued K-Mart Discount Stores and Central Adjustment Bureau for mental anguish and physical illness allegedly caused by their harsh and unreasonable efforts to collect a debt she did not owe. She has filed this appeal from the granting of a directed verdict in favor of each defendant.

Appellant's petition alleged that someone else had used her name to obtain a credit card from K-Mart and had used it to charge purchase of $1,352.29. That on numerous occasions she had informed the defendants that she was not the holder of the credit card and had never made such purchases, but despite her attempts to straighten out the matter, K-Mart entered into a long campaign of harassment of her, then apparently referred the account to Central Adjustment Bureau, who sent her by certified mail a letter on which forty-two cents postage was due. It contained only a card which bore no message. That this was

only a small part of a calculated plan to harass her, and it did.

That defendants continued their harsh, unreasonable and malicious attempt to collect from her for the purchases and that she has suffered mental pain, anguish and physical illness. She also alleged damage to her reputation in the neighborhood, with the credit bureau and with her employer, invasion of her right of privacy, threats by telephone and exorbitant bills, all to her damage of $25,000.00.

She prayed for the further sum of $10,000.00 exemplary damages for wanton and malicious acts of the defendants.

At the close of the evidence, court granted the motion for directed verdict filed by Central Adjustment and submitted the case against K-Mart to the jury on eight special issues. The jury was unable to reach a verdict and was discharged; K-Mart again urged its motion for directed verdict, and it was granted.

K-Mart's motion for directed verdict averred that 1) there is no evidence that K-Mart breached any duty owed to the plaintiff or 2) no evidence that it committed any act or omission amounting to negligence as to the plaintiff and 3) no evidence that any alleged act or omission on its part was a proximate cause of any injuries or damages allegedly sustained by the plaintiff.

The grounds stated in Central Adjustment's motion for directed verdict were 1) plaintiff's pleadings do not state a cause of action against Central Adjustment as a matter of law and 2) under the pleadings and evidence there is no theory of law or fact upon which Central Adjustment could be held liable to the plaintiff.

The trial court's take-nothing judgment recited that the motion for directed verdict was granted. It made no reference to any specific grounds as basis for its action.

■ Under these circumstances, plaintiff's burden on appeal is, with respect to each motion, to establish that a directed verdict cannot be supported on any of the grounds set forth. McKelvy v. Barber, 381 S.W.2d 59, 62 (Tex.Sup.1964).

■ In examining the evidence in this case we must view it in the light most favorable to the plaintiff, disregarding all conflicts and indulging in every intendment reasonably deducible from the evidence in favor of the plaintiff. Jones v. Nafco Oil and Gas, 380 S.W.2d 570 (Tex.Sup.1964).

The plaintiff testified that her name is Mrs. Orletta P. Whatley. At all times material to this case she lived at 5834 Northridge in Houston, was a registered nurse, customarily worked on the night shift and slept in the daytime. She has never applied for credit at any K-Mart store and did not purchase any of the articles for which K-Mart has attempted to collect from her.

In July, 1966, a postman delivered to her a statement addressed to *Ovella* Whatley, 5834 *Ridgeway*. Like each of the other bills she received, it was from K-Mart in Detroit, Michigan. Since it was not directed to her address and was not her bill, she notified the Bakers, who live at 5834 Ridgeway, one block away from her. Mr. Baker picked up the bill and said he would take it to K-Mart.

In September, 1966, the postman delivered a second bill from K-Mart. It was dated August 28, 1966 and was again addressed to *Ovella* Whatley at 5834 *Ridgeway*. She opened it. It showed a balance due of $596.81. She took this bill to the nearest K-Mart store. The charge slips enclosed with it bore the name of Ovella Whatley, 3007 Las Palmas, Apt. 4. She said she was extremely upset because she thought the other bill had been taken care of. She became very nervous and later developed headaches. She told the manager that she had received a bill that was not hers, she wasn't responsible for the charges, had never asked for credit at K-Mart, this was the second statement and she wanted to know what he would do about it. He

said he would take care of it and she left it with him. Although the bill was addressed to someone else at an address which was not hers, she opened it because she felt someone was making a mistake in her address and the best way to stop it was to take it to K-Mart and let them make it right.

A little after noon one day in the last of October or first of November, 1966, she received a telephone call from Detroit. She was asleep and her married daughter called her to the telephone at the insistence of the caller, a Mr. James. He said he was in the credit department of K-Mart and wanted to know what she was going to do about the bill she had incurred at K-Mart. She told him she had returned the statement some time before, she had not asked for credit at K-Mart and thought they would check into it and take care of it. He replied that he had dealt with all kinds of people and had heard all sorts of stories and this was apparently an act of some sort. He said it was her bill, she was responsible for it and he expected her to take care of it as soon as she could. He was extremely arrogant and demanding. By the time he hung up she was in tears. She was upset and developed headaches because of these things. She took medicines but couldn't go back to sleep that day. She admitted that she thought the call was "an attempt to clear up a mess-up," and that the caller did not threaten to sue, did not curse, swear, use any abusive language or make any insulting remarks. She said she told her employer and the credit bureau about K-Mart's efforts to collect from her, and they caused her no employment or credit problems.

About the same time she received the call from Mr. James, there was again delivered to her the bill dated August 28 that she had received in September, but this time it had been changed to bear her name, Orletta Whatley. However, it was addressed to 5834 *North Ridgeway.* This bill was for $1,088.80, and it contained many charge slips, each bearing the name and address of Ovella Whatley, 3007 Las Palmas, Apt. 4.

She returned to K-Mart that same day, told the security guard she had received another statement and wanted to talk to the manager or credit manager. She told him substantially the same things as before, adding that the bill was tremendous and that she could not possibly pay it. The manager again said he would take care of it. She talked to the security officer as she was leaving; he told her he remembered that a woman had tried to return some shoes and he had been called to quiet her when the store refused to take them back. The plaintiff testified that he said that woman had used the name Ovella Whatley, but "he said her description did not fit me."

When asked her reaction to the treatment she received on this visit she testified she thought they weren't doing anything to help her and didn't know what to do to help her. She got telephone calls from people who said they were from K-Mart. They were polite, but the calls disturbed her sleep and her rest so that she could hardly carry on her job and her normal home activities. She did not say how many calls she got or how frequent they were.

Early in February, 1967, the plaintiff paid 42 cents postage due and received an envelope which contained only a card bearing the words "To", "From", and "Date", followed by blank spaces. A branch manager of defendant Central Adjustment testified that it had been employed by K-Mart to collect the account, and had sent the envelope and card by certified mail, return receipt requested, so as to obtain the plaintiff's signature for comparison purposes. It was addressed to Orletta P. Whatley at 5834 *Ridgeway,* but in another place on the face of the envelope Mrs. Whatley's correct address was written: 5834 Northridge.

The envelope bears neither the name of its sender nor a return address. Postage of 48 cents had been paid by the sender. The plaintiff testified that she had the postman

take it back to the postoffice and that she went there and picked it up. She said she found it extremely upsetting when she opened it and found nothing inside.

Mr. Long, security officer of K-Mart store 4094, testified that on August 25, 1966 he observed that a woman whose name was not known to him, but whom he later learned to be Mrs. Hazel Baker of 5834 Ridgeway, was using a credit card in the name of *Ovella* Whatley. That in the fall of 1966 the plaintiff came to the store. He recalls talking to her only one time. She told him that Hazel Baker had used her name to open charge accounts at K-Mart, Foley's and Joske's. He said she also told him that she and Mrs. Baker had worked together at M. D. Anderson Hospital and that Mrs. Baker had many problems. Mr. Long said he suggested she write to K-Mart's office in Detroit, since credit matters are handled there and not in Houston. He put a note on the master card that there should be no further charges to the account unless authorized. He testified that only when Mrs. Baker was arrested in the spring of 1967 and charged with having obtained credit under several false names at different stores was he able to "put the pieces together."

On March 8, 1967, he sent the credit office in Detroit a detailed report as to the true identity of the person who had been charging the purchases.

The plaintiff then testified that her recollection as to her conversation with Mr. Long differed from his with respect to some details concerning Mrs. Baker's past employment and problems, and she didn't remember Mr. Long's having suggested that she write to Detroit. She did not otherwise contradict his account of their meeting. She was asked whether, in view of the difficulty with her accounts at several stores and Mrs. Baker's residence being exactly one block away, she had a pretty good idea it was all a big mistake. Her reply was that it had to be a mistake, it wasn't she charging and something was going on. That she wanted to get to the bottom of it but didn't have much help from K-Mart.

■ Clearly, someone calling herself Ovella Whatley incurred debts to K-Mart, so K-Mart was entitled to make reasonable efforts to collect them. We hold that the evidence, even when viewed in the light most favorable to the plaintiff, shows as a matter of law that the plaintiff failed to raise a fact issue as to whether the collection efforts of the defendants were unreasonable or any fact issue as to a breach of K-Mart's duty to her. Also, that under her pleadings the evidence raised no theory upon which Central Adjustment could be held liable to her.

■ The contents of the bills were not at all harassing, insulting, rude or even impolite. There was an interval of several weeks between each of them except the third and fourth ones. Each simply stated an amount due, and did so in a routine fashion. Only two bore the plaintiff's correct name, and none of them was directed to her correct address. Although her testimony is conflicting, she is entitled to have us consider that the local telephone calls disturbed her sleep so that she could hardly carry out her duties. She did not testify that she told the callers that she slept during the daytime, and there is nothing to show a campaign of harassment or anything other than ordinary collection efforts. Mr. James was arrogant and demanding, but those who made the local calls were polite.

■ The evidence does not raise any fact issue in support of her allegations of harassment, a calculated plan to bring pressure on her, to worry her, of libel, any damage to her reputation, security or right of privacy or any threats on the part of K-Mart. Further, we cannot say that it could have been reasonably foreseen that K-Mart's collection efforts would have damaged the plaintiff, so the issue of proximate cause was not raised.

.

We find nothing of a harassing, harsh, malicious or negligent nature in the sending of the envelope and its contents by Central Adjustment. It was an innocuous method of obtaining a signature to compare with those on the charge slips. The only evidence as to the payment of insufficient postage was that it was an inadvertence. Mrs. Whatley was not obligated to pay the postage due. She could have let the envelope and its contents be returned to the sender. We hold that the plaintiff raised no fact issue by her pleadings and evidence by which Central Adjustment could have been held liable to the plaintiff. No showing was made that Central Adjustment harassed her or was part of a calculated plan to do so.

In Duty v. General Finance Company, 154 Tex. 16, 273 S.W.2d 64 (1954), our Supreme Court did not outline the limits to which a creditor might go in making reasonable efforts to collect usury without risking liability, but did clearly state that a "resort to every cruel device which his cunning can invent in order to enforce collection when that course of conduct has the intended effect of causing great mental anguish to the debtor, resulting in physical injury and causing his loss of employment, renders the creditor liable to respond in damages."

In discussing that holding in the 1962 case of Ware v. Paxton, 359 S.W.2d 897, the Texas Supreme Court pointed out:

"The borrowers apparently sought only actual damages in the Duty case, but it has application to our case because it was considered necessary that the lender carry on a campaign of harassment in order to entitle the borrowers to *actual* damages, much less *exemplary* damages."

K-Mart's security officer may have been slow in making known to its credit department what he had learned about the identity of the person who was causing the problem to both the plaintiff and to K-Mart, and K-Mart's collection efforts may have been inefficient, but the plaintiff has failed to show that they were unreasonable, willful, wanton, malicious or that they were intended to cause mental anguish or bodily harm to her. See Montgomery Ward & Co. v. Brewer, 416 S.W.2d 837 (Tex.Civ.App. 1967, writ ref., n. r. e.).

The judgment of the trial court is affirmed.