Olga Medina **GABRIEL**, Appellant,

v.

Inez Gabriel **MENDEZ** et vir, Appellees.

No. 15342.

Court of Civil Appeals of Texas, San Antonio.

Nov. 27, 1974.

Rehearing Denied Dec. 31, 1974.

Sam C. Bashara, Goodstein, Semaan & Bashara, San Antonio, for appellant.

Richard G. Strong, Casseb, Leon, Rodgers, Strong & Pearl, San Antonio, for appellees.

BARROW, Chief Justice.

Appellant-wife has perfected her appeal from a take-nothing judgment entered after an instructed verdict was granted appellees, Inez Gabriel Mendez and her husband, Encarnacion Mendez, who were joined as defendants in appellant's suit for divorce against her husband, Johnny Gabriel.

Appellant alleged that she had joined her husband in the conveyance of two pieces of property to appellees, who are the husband's mother and stepfather, because of fraud practiced upon her by the husband and appellees in a conspiracy to deprive the wife of her interest in these community assets. She prayed that the trial court set aside and hold said conveyances for naught. The trial court granted appellees' motion for an instructed verdict after all parties had rested and closed their case. Appellant then took a non-suit as to all other claims [1] including the primary action for divorce and relief ancillary thereto.

Appellant asserts the single assignment of error that the trial court erred

---

1. In addition to seeking full relief in the divorce action, appellant also sought to set aside the conveyance by husband of 990 shares of stock in Discount Beverages Mart, Inc., to husband's alleged mistress. Wife also sought to set aside an alleged conveyance from husband to his aunt.

in instructing a verdict in favor of appellees. Appellees, by counter-point, urge that this point is too general to merit consideration. Appellees' written motion for instructed verdict contains nine points wherein they urge that there was no evidence or insufficient evidence to support the submission of an issue on any of the five alleged fraudulent misrepresentations or actions of appellees. It was further asserted by appellees that there was no basis to cancel, rescind, set aside or hold for naught the two deeds from the husband and wife to appellees. The trial court did not indicate the grounds upon which the instructed verdict was granted.

In this situation, appellant's burden on appeal is to establish that the directed verdict cannot be supported on any of the grounds set forth in appellees' motion. McKelvy v. Barber, 381 S.W.2d 59 (Tex. 1964); Whatley v. K-Mart Discount Stores, 451 S.W.2d 568 (Tex.Civ.App.— Houston [1st Dist.] 1970, writ ref'd n. r. e.). While appellant's point is very general, she specifically asserts under this point that there is evidence of probative force to require submission of issues regarding two alleged misrepresentations made to her by Mrs. Mendez and further that there was no consideration for the conveyance to appellees. While it would have probably been preferable for wife to have presented separate assignments of error, these contentions are all somewhat related and clearly ascertainable in the argument under this point. Appellees' counter-point is overruled.

Olga and Johnny Gabriel were married in 1952 and have four children, three of whom are under eighteen years of age. On June 14, 1973, they jointly executed deeds conveying two pieces of real estate to appellees for the recited consideration of $10.00 and other valuable consideration. On September 24, 1973, wife filed this suit for divorce. She amended her petition on October 5, 1973, and joined appellees and others as defendants. Wife asserts on this appeal that the deeds were executed by her because of two misrepresentations made by her husband or his mother, Mrs. Inez Mendez. The first alleged misrepresentation was that Mrs. Mendez would not lend husband the funds owed to the Internal Revenue Service for back taxes unless the properties were conveyed to her. The second alleged misrepresentation was an assurance by Mrs. Mendez that if wife agreed to transfer the property, Mrs. Mendez would hold same for the benefit of wife and the children.

Since this is an appeal from the granting of an instructed verdict, we must accept as true the evidence in the record supporting wife's cause of action against appellees. All conflicts and inconsistencies must be resolved in her favor, and we must draw all inferences therefrom most favorable to the alleged cause of action against appellees. Constant v. Howe, 436 S.W.2d 115 (Tex.1968).

We have been furnished a partial statement of facts which contains the testimony of wife, husband and Mrs. Mendez. There is very little testimony in this record relating to wife's claim of fraud and conspiracy; however, this testimony is largely uncontradicted. Mrs. Mendez has carried the greater part of the financial burdens of the Johnny and Olga Gabriel family from the time of their marriage. They lived in her home for the first fifteen years of the marriage, and the husband was sent to college by Mrs. Mendez for two or three years during that time. The couple later built a home on a lot given by Mrs. Mendez. Mrs. Mendez either furnished the money or the credit for several unsuccessful business ventures for the husband. Unquestionably, this was done very informally and without any attempt to keep accurate records. However, all parties are fully aware of Mrs. Mendez's substantial financial contributions to the ongoing of the Johnny and Olga Gabriel family.

Husband manages retail liquor stores located on the two pieces of real estate involved in this appeal for the corporation Discount Beverages Mart, Inc. One is located at 424 N. Zarzamora Street and the other at the corner of Hildebrand and

Blanco Avenue. Discount Beverage Marts, Inc. was incorporated in 1971 with 998 shares in husband's name, one share in wife's name, and one share in the name of a Mr. Casarez. In February of 1973, husband conveyed 990 of the shares in his name to Mrs. Rosalie Martinez, which conveyance was challenged by wife by a claim which was non-suited. In 1969, Mrs. Mendez conveyed the Zarzamora Street property to husband; and he agreed to pay her the sum of $15,000, which has not been paid. In 1970, husband and wife executed a deed of trust on this property to secure a $39,000 note to his aunt for moneys she had advanced to husband. This note has not been repaid and the lien and deed of trust securing same is still in effect.

The Hildebrand Avenue property was purchased in husband's name from Humble Oil and Refining Company in 1972 for the sum of $46,000. Of this sum, $15,000 was lent husband by Mrs. Mendez and the other $31,000 was borrowed from the Bexar County National Bank on the signature of husband and wife. This and other community loans from said bank to remodel the premises and stock an inventory were secured by the pledge of savings accounts belonging to Mrs. Mendez. Mrs. Mendez also personally advanced funds to remodel the premises. Thus it is seen that Mrs. Mendez had a substantial financial interest in both properties.

■ There is no direct evidence of a conspiracy between husband and appellees regarding the conveyances in question. We recognize that direct evidence is seldom available to establish a conspiracy. The general rule is that conspiracy liability is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention or purpose of the alleged conspirators. International Bankers Life Insurance Company v. Holloway, 368 S. W.2d 567 (Tex.1963).

■ Wife testified that she had two telephone conversations with Mrs. Mendez in the year preceding the conveyance relating to the conveyance of the properties in question. Mrs. Mendez told her in these conversations that she was not going to let husband have any money to pay the IRS debt or let him have additional funds for any other purpose unless these two pieces of property were placed in Mrs. Mendez's name. Wife was told by Mrs. Mendez that if this were done, Mrs. Mendez would continue to take care of wife and children. This is the extent of the direct testimony to support the cause of action against appellees.

This evidence does not raise an inference of fraud on the part of appellees. It is undisputed that IRS had made an assessment of back taxes owed on a former business venture and that this obligation, which was a community debt, had to be paid. It is not significant here that the money was actually advanced before the deeds were signed in that the representation of Mrs. Mendez was admittedly made before the advancement was made. The testimony of wife establishes that the couple needed $10,000 to pay IRS and that Mrs. Mendez refused to provide the money unless the properties were conveyed to her.

■ In order for a promise of something to be done in the future to constitute fraud, it is necessary that the promise should be made with the intent at the time of making that it would not be performed. Stanfield v. O'Boyle, 462 S.W.2d 270 (Tex.1971). There is no evidence whatsoever in this record which would support an inference that Mrs. Mendez's promise to continue to take care of wife and the children if the property was conveyed to her was made with the intent that it would not be performed. Rather, there is a strong inference that Mrs. Mendez's insistence on the deeds being executed before advancing any further sums was to protect wife's interest. It is established that in the months immediately preceding this agreement, wife had complained frequently to Mrs. Mendez of husband's conduct in staying away from home and apparently consorting with another woman. This made

Mrs. Mendez angry at her son, and she made frequent demands on him to repay the numerous loans made by Mrs. Mendez. Mrs. Mendez obviously feared that husband would attempt to convey the real estate to Mrs. Martinez, as he had done with the corporate stock of his business. Wife admitted that in July, 1973, Mrs. Mendez had offered her $5,000 to purchase a new car and that in September, 1973, Mrs. Mendez had paid the school tuition of one child. Mrs. Mendez's first refusal of a request by wife for financial assistance occurred after wife filed this suit for divorce. Up until that time, wife and Mrs. Mendez were very close. This record will not support an inference that Mrs. Mendez's promise to provide for wife and children in the future was made with the intent that it would not be performed.

Finally, there is no evidence that husband conveyed the property in contemplation of the divorce action. Unquestionably, the marriage had been shaky for some time because of his relationship with Mrs. Martinez. However, there is no indication that husband ever had any plans for divorce until after September 20, 1973. Although wife filed the suit for divorce, her action was undoubtedly precipitated by the admitted fact that on September 20, 1973, her husband had taped an intimate conversation between her and a married man with whom she was having an affair. Wife testified that she went to an attorney and directed him to file suit for divorce as soon as she learned that her husband had gone to an attorney.

We conclude from this record that there is no evidence of probative force to support a fact issue that wife's joinder in the conveyances to appellees was the result of a fraudulent misrepresentation to her by anyone. Rather, the evidence conclusively establishes that the deeds were freely executed by wife for good and valuable consideration. Thus, there is no basis to set aside or hold same for naught. The trial court did not err in granting an instructed verdict as to these two defendants.

The judgment is affirmed.