**DUNHAM AND ROSS COMPANY,**
**Appellant,**

v.

**William O. STEVENS, Appellee.**

**No. 5536.**

Court of Civil Appeals of Texas,
Waco.

June 3, 1976.
Rehearing Denied June 24, 1976.

Johnson, Bromberg, Leeds & Riggs (Richard L. Jackson), Dallas, for appellant.

John L. Shook, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is an instructed verdict case. Dunham and Ross Co., Plaintiff-Appellant, filed this suit against Defendant-Appellee William O. Stevens, alleging a cause of action based upon a written contract of sale wherein Plaintiff was purchaser and Defendant was seller. Plaintiff sued for the return of $10,000 earnest money placed in escrow in connection with said contract. Defendant Stevens filed a cross-action for the $10,000 earnest money. Trial was had to a jury at the conclusion of which each side filed a motion for instructed verdict. The trial court overruled Plaintiff's motion, granted Defendant's motion, entered judgment that Plaintiff take nothing, and awarded Defendant Stevens the $10,000.00 earnest money. From this judgment Plaintiff Dunham and Ross Co., appeals on six points of error. We overrule Plaintiff-Appellant's points and affirm the trial court's judgment.

Appellant's first point is as follows: "The trial court erred in granting the Motion of the Defendant William O. Stevens for Instructed Verdict." Plaintiff-Appellant presents no point or points asserting

that the granting of the motion cannot be justified upon any of the grounds set out in Defendant's motion. Defendant-Appellee Stevens's motion for instructed verdict contained sixteen paragraphs setting out several grounds in support of the motion. The trial court's judgment sustaining Defendant's motion did not specify any particular point or points upon which the motion was granted, but in effect merely recited that Defendant's motion was "well taken and should be sustained." To reverse the judgment of the trial court under these circumstances, it was necessary for Plaintiff-Appellant to assume the appellate burden of establishing that the peremptory instruction cannot be supported on any of the grounds set out in Defendant-Appellee's motion. *McKelvy v. Barber* (Tex.1964) 381 S.W.2d 59; *Whatley v. K–Mart Discount Stores* (Tex.Civ.App. Houston, 1970) 451 S.W.2d 568, NRE; *Carrico v. Stop-N-Go Markets of Texas* (Tex.Civ.App. San Antonio, 1973) 492 S.W.2d 383, no writ; *Gabriel v. Mendez* (Tex.Civ.App. San Antonio 1974) 517 S.W.2d 447, NRE. Since the Appellant did not assume its appellate burden of establishing that Appellee's motion cannot be supported on any of the grounds set out therein, we overrule Appellant's first point of error.

 Be that as it may, this is an appeal from the granting of an instructed verdict, and we must accept as true the evidence in the record supporting Plaintiff-Appellant's cause of action, disregarding all conflicts and indulging every intendment reasonably deducible from the evidence in favor of Plaintiff-Appellant. *Constant v. Howe* (Tex.1968) 436 S.W.2d 115; *Jones v. Nafco* (Tex.1964) 380 S.W.2d. 570. We believe that by examining the record in this light, as we have, that there are no fact issues to be decided by the jury, and that Defendant-Appellee was entitled to judgment as a matter of law, as will be more particularly hereinafter discussed.

Appellant's second point of error is worded as follows: "The trial court erred in refusing to grant the Motion of Plaintiff Dunham and Ross Co. for Instructed Ver-

dict." We overrule this point, in view of our holding that Defendant-Appellee is entitled to judgment as a matter of law, for the reasons above stated as well as those hereinafter stated.

On or about November 20, 1972, a contract of sale was entered into by and between Defendant-Appellee Stevens as seller and Plaintiff-Appellant Dunham and Ross Co., Trustee, as purchaser, wherein Stevens agreed to convey 234.122 acres of land in Collin County, Texas to Dunham and Ross, Trustee, for a total consideration of $269,-240.30, payable $65,000.00 in cash, the purchaser's assumption of a $76,000.00 first lien note executed by one C. D. Wyche and wife payable to Fidelity Union Life Insurance Co. (hereinafter called the "Wyche Note"), and the balance of purchase price to be paid by the execution by Plaintiff-Purchaser of a second lien note in the amount of $128,-240.30. The contract provided that Purchaser Dunham and Ross, Trustee, should put up $10,000.00 earnest money in escrow with Don L. Ratliff, which purchaser did. It is this $10,000.00 earnest money that is in controversy herein. Without quoting the entire contract, suffice it to say that the following are some of the pertinent provisions of the contract which have a bearing upon this suit, to wit:

"Seller agrees to furnish owner's title policy through Plano Title Company to said property, which shall be conveyed free and clear of any and all encumbrances except those named herein, _____."

"If said Title Co. makes objections to the title to said property, Seller shall have 15 days time within which to cure such objections, and if Seller is unable to cure the objections, then the above mentioned ($10,-000.00) deposit shall be returned to Purchaser, and this contract shall thereupon terminate, and all parties be released from liability hereunder. _____. *In the event Purchaser is the defaulting party, Seller shall have the right to retain said cash deposit as full liquidated damages for the breach of this contract.*" (emphasis supplied).

"Purchaser agrees, for purposes of this contract, that any restrictions or conditions imposed in any additions or subdivisions of which the herein described property is a part, *or easements for utility purposes, shall not be recited as objections to the title or considered as an encumbrance on said property*." (emphasis supplied).

"Purchaser shall have the right to assign this contract of sale and_____ in the event of such assignment, such assignee shall be substituted in all respects for Purchaser hereunder as though such assignee had originally been the Purchaser hereunder."

"*Closing shall take place at the offices of Plano Title Co., Plano, Texas, not later than January 5, 1973.*" (emphasis supplied).

"All mineral rights owned by Seller are to be transferred to Purchaser."

After the contract had been executed and the earnest money put up, an owner's title policy binder was issued by Plano Title Co. in connection with the property on December 15, 1972, setting out both printed and typewritten exceptions, more particularly hereinafter discussed. Plaintiff-Appellant offered in evidence a letter from Bill Kramer, vice president of Plano Title Co., to Mr. R. L. Ross, Dunham and Ross Co., dated December 17, 1972, enclosing the Owner's Title Policy Binder. However, neither the fact of the title binder nor its contents were brought to the attention of Defendant-Appellee Stevens until January 29, 1973, some 24 days after the agreed closing date.

On December 13, 1972, Plaintiff-Appellant Dunham and Ross, Trustee, assigned all their rights under the sale contract to "The Carlton Companies," which they had a right to do under said contract.

Most of the negotiations in behalf of Dunham and Ross was done by a Mr. Harold Giddens, and most of the negotiations in behalf of Defendant Stevens was done by a Mr. Don Ratliff. Dunham and Ross Co. was a real estate brokerage firm, and as it turned out in the undisputed evidence, "Dunham and Ross, Trustee," although it was the nominal purchaser, was in truth and in fact acting as an agent or broker for

The Carlton Companies, a firm controlled by a Mr. I. C. ("Irv") Deal.

Don Ratliff, the agent of Stevens, was also a real estate broker, and in fact the sales contract in question provided that a 6% real estate commission would be paid one-half to Dunham and Ross Co. and the other half to Don Ratliff.

As stated, the contract provided that "closing shall take place at the offices of Plano Title Co., Plano, Texas, not later than January 5, 1973." So about 10:00 A.M. on said date, a meeting was had in the office of Plano Title Co. Mr. Bill Kramer was present representing the title company. Mr. Giddens and Mr. Ross (of Dunham and Ross) appeared in behalf of the purchasers, and Mr. Ratliff and Mr. Stevens appeared in behalf of the seller. Before Ratliff and Stevens arrived at the meeting, Giddens (testified that he) delivered three letters (the contents of which we will discuss later in this opinion) to Kramer, the title man; however, none of these letters were shown to or brought to the attention of seller Stevens or Ratliff at that time. Neither was the title binder shown to Ratliff or Stevens. (The only exception to this was that Giddens showed Ratliff a letter from Dunham and Ross addressed to Ratliff demanding a return of the $10,000.00 earnest money).

The sum and substance of the January 5, 1973, meeting was that Giddens and Ross told Ratliff and Stevens that "Irv Deal does not like the deal, and we are terminating" the contract. Stevens at that time had no knowledge that the purchasers Dunham and Ross had made an assignment of the contract to The Carlton Companies; in fact, he did not even know who Irv Deal was. Ratliff knew who Irv Deal was but did not at that time know that he (Deal) was involved in any way in this transaction. Seller Stevens and his broker, Ratliff, were entirely unaware of the contents of the title binder, or what part The Carlton Companies and Irv Deal played in the matter, or why the Plaintiff-Appellant Dunham and Ross were terminating the contract.

The mystery was cleared up for Stevens and Ratliff about three weeks later in this manner: Stevens testified that on January 29, 1973, he received some mail in an envelope showing it to be sent from Dunham and Ross, containing three letters. The letters and the envelope are in evidence, and the envelope is postmarked January 24, 1973.

The letter of transmittal is dated January 5, 1973, addressed to Stevens and is signed by R. L. Ross Jr., for Dunham and Ross Co., the body of which letter is as follows:

"Please find enclosed a copy of a letter from the Carlton Companies to us terminating the contract of sale and assignment of the above captioned property.

"Therefore, *for the reasons mentioned in the Carlton Companies' letter,* we are writing this letter terminating the position of Dunham & Ross Co. in the above captioned contract." (emphasis supplied).

Now, here is the Carlton Companies' letter above referred to, which was enclosed to Stevens: Said letter was dated January 4, 1973, was shown to be signed by a vice president of the Carlton Companies and addressed to R. L. Ross and reads as follows:

"Pursuant to the above captioned property on which the Carlton Companies executed an assignment of contract with your firm, dated December 13, 1972, please be advised that due to the fact that there is a 50% mineral reservation which allows the owners of such title to produce minerals, we feel that this instrument unduly jeopardizes our position on the proposed purchase of the property and that it further jeopardizes any financing which we would propose to place on the property at a later date.

"Furthermore, there are several easements affecting the property which in the judgment of our attorneys, make it less usable than originally represented by the Seller. Finally, there is a mortgage lien, which was far broader than originally represented by the Seller that would unduly jeopardize a purchaser taking a position as mortgagor thereof.

"For all the above reasons we hereby specifically terminate our assignment of contract agreement and request a return of the $10,000.00 earnest money as quickly as possible."

The third letter enclosed is dated January 5, 1973, from R. L. Ross Jr., of Dunham and Ross Co. addressed to Don L. Ratliff, Escrow Agent, which reads:

"Please refund the $10,000.00 escrow money to Dunham and Ross Co., 810 Two Turtle Creek Village, Dallas, Texas 75219, so that we may promptly return same to the Carlton Companies." This is the letter (and the only letter) that Giddens showed Ratliff at the January 5, 1973, meeting at the title company office.

Then on May 23, 1973, Stevens received a letter by certified mail from a Dallas law firm demanding return of the $10,000.00 earnest money, asserting that Stevens was unable to close the deal because of the title defects consisting of the 50% mineral reservation, "various easements which would materially restrict the use of the property," and the "mortgage lien which was broader than originally described in the contract of sale." (Meanwhile, sometime after the January 5, 1973, meeting at the title company office, Ratliff delivered the $10,000.00 earnest money to Stevens.) This Dallas law firm was shown by the evidence to have originally been the attorneys for the Carlton Companies but who thereafter in this litigation represented Plaintiff-Appellant Dunham and Ross.

In our opinion the Plaintiff-Appellant as purchaser in this contract under the undisputed evidence acted in such a manner as to bring about an anticipatory breach of the contract. It has long been the law in Texas that when one party repudiates the agreement and refuses to be bound by material obligations, the other party may accept such repudiation as final and is not required to further regard the obligations imposed upon him thereby. *Pollack v. Pollack* (Tex.Com.App.1931) 39 S.W.2d 853, opinion approved by the Supreme Court, plaintiff-in-error's second motion for rehearing overruled in 46 S.W.2d 292; *Wil-*

*liams v. Shamrock Oil and Gas Co.* (Tex. Com.App. 1936) 128 Tex. 146, 95 S.W.2d 1292, opinion adopted by the Supreme Court; *Universal Life and Accident Co. v. Sanders* (1937) 129 Tex. 344, 102 S.W.2d 405, opinion adopted by the Supreme Court; *Ashton v. Bennett* (Waco, 1973) 503 S.W.2d 392, NRE; *Miller v. Puritan Fashions Corp.* (Waco, 1974) 516 S.W.2d 234, NRE.

Here, Plaintiff-Appellant as purchaser was the defaulting party by the undisputed evidence, and therefore under the terms of the contract Stevens as seller was entitled as a matter of law to the $10,000.00 earnest money as liquidated damages for breach of the contract.

As shown by the letters hereinabove quoted, the three title objections upon which the purchaser predicated his termination of the contract were: (1) the 50% mineral reservation, (2) "several easements affecting the property which in the judgment of our attorneys make it less usable than originally represented by the Seller," and (3) "a mortgage lien which was far broader than originally represented by the Seller_ _ _ _ _."

The undisputed evidence shows these title objections to be without merit. Here is what the record showed with reference to these objections:

(1) *The 50% mineral reservation*: There was a first draft of the contract prepared or caused to be prepared by Dunham and Ross which called for the seller to convey all the minerals. This draft of the contract was delivered to Ratliff who took it to Stevens. Stevens refused to sign this draft of the contract for the stated reason that he did not own all of the minerals. Ratliff carried this word back to Dunham and Ross who prepared or caused to be prepared a second draft of the contract which provided: "All mineral rights owned by Seller are to be transferred to Purchaser." This was the contract that was signed. All parties concerned knew before the contract was signed that Stevens did not own all the minerals, and during the trial Plaintiff-Appellant abandoned this title objection.

(2) *The easements*: The title binder listed the following easements: "Any easement the existence of which can be ascertained by a visual inspection of the property," any portion lying within the bounds of a public or private road, four easements to Texas Power and Light Company, one easement to Southwestern Bell Telephone Company, one easement to Collin County Soil Conservation District, and utility lines along the north and south property lines. As hereinabove stated, the contract provided: "Purchaser agrees, for purposes of this contract, that any restrictions or conditions imposed in any additions or subdivisions of which the herein described property is a part, or easements for utility purposes, shall not be recited as objections to the title or considered as an encumbrance on a said property."

(3) *The mortgage lien*: This referred to the $76,000.00 Wyche note which was a first lien on the property and which was to be assumed by the purchaser Dunham and Ross. A photostatic copy of the Wyche note was attached to the contract as Exhibit "C". The deed of trust which described and secured the Wyche note is in evidence, and was shown to have been filed for record on February 4, 1966, long before any facts transpired material to this controversy. Moreover, Ratliff's deposition was taken by Plaintiff-Appellant prior to trial, attached to which is a copy of the recorded deed from Wyche and wife to Stevens, describing the $76,000.00 Wyche note. Under this state of the record, Plaintiff-Appellant either had actual knowledge of the mortgage lien securing the Wyche note, or else was charged with such knowledge by virtue of the recorded deed and deed of trust.

Plaintiff-Appellant's points three, four, and five assert the trial court erred in excluding testimony of Harold Giddens concerning whether the title encumbrances affected Plaintiff-Appellant's decision to refuse to purchase the property, and concerning the advice of Plaintiff-Appellant's attorneys concerning such matters. We overrule these points, because the record does not show what the excluded evidence

would have been. In other words, there is no showing as to what Giddens would have testified to had he been allowed to testify to the excluded matters. See 4 Tex.Jur. (2), Part 2, "Appeal and Error—Civil Cases," pars. 722, 723, page 101; par. 809, p. 328, par. 810, p. 329.

■ Plaintiff-Appellant's sixth and final point asserts the trial court erred in admitting testimony by the Defendant Stevens as to a subsequent sale of the property to a third party. We overrule this point, because Plaintiff-Appellant's attorney opened up this line of testimony by asking witness Giddens (an employee of and called as a witness by Plaintiff-Appellant) a question about the very same testimony now complained of. The question was asked by Plaintiff-Appellant's attorney of Giddens: "Do you know what ultimately became of the property involved?" To this Giddens answered: "It was resold, I would say in a year, year and a half ago, perhaps." Thereafter in the trial, Defendant's attorney asked Stevens if he still owned the land, to which Stevens said, "No, it has been sold," and then without objection Stevens testified he sold it on the same title he had at the time of the Dunham and Ross contract. Then when Stevens was asked who he sold it to, Plaintiff-Appellant objected, which objection was overruled. Then Stevens testified he sold it to Hugo Schoelkopf III. Then subsequently on cross examination, Plaintiff-Appellant's counsel brought out from Stevens that he sold it for substantially more money than the Dunham and Ross contract called for.

Under this state of the record, if there was any error it was harmless because it was invited by Plaintiff-Appellant and thereafter waived by subsequent questioning of Stevens by Plaintiff's counsel. Rule 434, Texas Rules of Civil Procedure.

All of Plaintiff-Appellant's points and contentions have been carefully considered, and are overruled as being without merit. Judgment of the trial court is accordingly affirmed.

AFFIRMED.